UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALPHA THETA OF ALPHA DELTA PI
BUILDING ASSOCIATION,

　　　　Plaintiff,

　　v.

PACIFIC NORTHWEST REGIONAL
COUNCIL OF CARPENTERS,

　　　　Defendant.

Case No. C09-1306RSL

ORDER GRANTING MOTION
TO DISSOLVE THE TRO

## I. INTRODUCTION

This matter comes before the Court on defendant's motion to reconsider, dissolve, and/or set aside a temporary restraining order ("TRO") issued on an *ex parte* basis by a King County Superior Court Commissioner on September 11, 2009. The TRO prohibits defendant from engaging in certain conduct, including picketing, around plaintiff's premises and/or the premises of the sorority house it operates, Alpha Delta Pi. By order dated September 16, 2009, the Court denied the motion for reconsideration and requested that plaintiff file a response to the motion to dissolve the TRO. Plaintiff has filed a response, defendant has filed a reply, and the matter is now ripe for the Court's consideration. For the reasons set forth below, the Court grants the motion and dissolves the TRO.

ORDER GRANTING MOTION
TO DISSOLVE THE TRO - 1

## II. ANALYSIS

Plaintiff is a non-profit corporation that owns property, a sorority house, near the University of Washington campus. Defendant is a labor union that claims to have a labor dispute with Marquise Drywall ("Marquise"). Declaration of Lesley Read-Blakeway (Dkt. #1-5) ("Blakeway Decl."), Ex. A. In June 2009, plaintiff and Marquise entered into a contract to complete work on the basement of the sorority house. About three weeks after Marquise began its work, approximately thirty individuals began marching and picketing up and down the street in front of the property. The picketers also whistled and chanted as they marched. Plaintiff also contends that defendant's agents have verbally harassed other contractors and employees of plaintiff, temporarily blocked the sidewalk in front of the property, and endangered the safety of plaintiff's president by distributing approximately 1,000 fliers with her name and personal mobile telephone number.

On September 11, 2009, plaintiff filed in King County Superior Court its complaint and an *ex parte* motion for a TRO seeking to prohibit defendant and its agents from picketing and distributing written materials, among other conduct. The TRO was issued on September 11, 2009. Defendant promptly removed the case to this Court and seeks to have the TRO dissolved. Plaintiff has not moved this Court for further injunctive relief.

**A.  Subject Matter Jurisdiction.**

As an initial matter, the Court must determine whether it has subject matter jurisdiction, which plaintiff disputes. As the party asserting federal court jurisdiction, defendant has the burden of proving that it exists. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Where, as here, the parties are not diverse, the court must determine whether the complaint affirmatively alleges a federal claim. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Under the "well-pleaded complaint rule," federal jurisdiction is present "only when

ORDER GRANTING MOTION
TO DISSOLVE THE TRO - 2

a federal question is presented on the face of plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392. "A defense that raises a federal question is inadequate to confer federal jurisdiction." Merrill Dow Pharm., Inc. v. Thompson, 478U.S. 804, 808 (1986). However, the Supreme Court has recognized a "corollary" to the well-pleaded complaint rule: federal jurisdiction exists when claims are asserted in an area of law that Congress "so completely pre-empt[ed]" that the claim "is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); see also Balcorta v. Twentieth Century Fox Film Corp., 208 F.3d 1102, 1107 (9th Cir. 2000) (explaining that when federal statutes completely preempt an area of state law, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law") (internal citations and quotations omitted).

Defendant contends that jurisdiction is present because plaintiff's claims are completely preempted by Section 303 of the Labor Management Relations Act ("LMRA), 29 U.S.C. § 187. Section 303 provides a private right of action for conduct that violates Section 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4). Section 8(b)(4) defines unfair labor practice as follows:

> It shall be an unfair labor practice for a labor organization . . . to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . (B) forcing or requiring any person . . . to cease doing business with any other person.

Based on its plain language, Section 8(b)(4) prohibits labor organizations from using threats, coercion, or restraint to interfere with the business relationships of employers engaged in commerce for the purpose of causing the employer to cease doing business with any other person. Such conduct has been labeled a "secondary boycott" or "secondary picketing" because it is not aimed at the union members' own employer; rather, the conduct is used "to persuade the customers of the secondary employer to cease trading with him in order to force him to cease dealing with, or to put pressure upon, the primary employer." NLRB v. Retail Store Employees Union, 447 U.S. 607, 612 (1980).

ORDER GRANTING MOTION
TO DISSOLVE THE TRO - 3

The Supreme Court has explained that federal law, rather than local law, governs damages actions based on peaceful union secondary activities. Local 20, Teamsters, etc. v. Morton, 377 U.S. 252, 261 (1964) (explaining that "state law has been displaced by § 303" in that area). The *Morton* Court explained that "this is an area of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law." Id. (internal citation and quotation omitted). After *Morton* was decided, the Ninth Circuit has held that "cases involving Section 8(b)(4) are removable." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1400 n.7 (9th Cir. 1988); see also, Smart v. Local 702 Int'l Bhd. of Elec. Workers, 562 F.3d 798, 808 (7th Cir. 2009) (holding that Section 187(b) "*completely* preempts state-law claims related to secondary boycott activities described in section 158(b)(4); it provides an exclusive federal cause of action for the redress of such illegal activity.") (emphasis in original).

Against that legal backdrop, the Court must determine if the conduct at issue here falls within the purview of Section 8(b)(4). It is undisputed that defendant is a "labor organization" and plaintiff is an employer engaged in commerce for purposes of the statute. Moreover, defendant has engaged in picketing and related conduct (1) to discourage plaintiff from doing business with Marquise, and (2) to persuade plaintiff's members and potential members "to cease patronizing plaintiff . . . unless Plaintiff complied with Defendant's demands." Complaint at ¶¶ 3.15, 3.16. The complaint therefore alleges secondary activity that courts have found to be completely preempted and removable. See, e.g., Ethridge, 861 F.2d at 1400; Smart, 562 F.3d at 808.

Despite that authority, plaintiff contends that its claims are not removable. It cites a smattering of state law cases that were decided prior to the modern era of preemption analysis and cases that involve materially different facts. Moreover, plaintiff contends that the case is not removable because Marquise is no longer performing work at the house, so no labor dispute

ORDER GRANTING MOTION
TO DISSOLVE THE TRO - 4

exists. However, federal law applies to that situation. Int'l Union of Elec. v. NLRB, 366 U.S. 667, 679 (1961) (holding that a union may picket a secondary employer only when the primary employer is at the job site). Plaintiff's argument about Marquise's absence is better directed towards the merits of the dispute rather than to the Court's jurisdiction. Plaintiff also contends that some of defendant's conduct is not covered by the NLRA, such as picketing by independent contractors and violence associated with a labor dispute. While plaintiff may be unable to obtain damages for the conduct that is not covered by Section 303, it appears that jurisdiction nevertheless exists based on the conduct that is covered. See, e.g., Rainbow Coaches v. Teamsters Local 996, 704 F.2d 1443, 1448 (9th Cir. 1983) (explaining that "when the object of a union's conduct is protected but the tactics used to attain that end are not, . . . the district court should award damages only for the losses directly resulting from the unlawful activity.").[1] Moreover, plaintiff has identified only a single, seemingly isolated instance of violent conduct: an unnamed individual punched the side view mirror of a truck belonging to one of plaintiff's contractors. Declaration of Richard White, (Dkt. #1-6) at ¶ 12. Plaintiff, however, has not asserted any claim for damages based on that conduct or sought to enjoin violent conduct directed towards its employees or contractors. While a claim based on violent conduct might be cognizable in state court in some circumstances, there is no such claim in this case.

For all of these reasons, the Court concludes that for purposes of resolving this motion, it has subject matter jurisdiction. Because plaintiff was given only two days to respond to the motion to dissolve the TRO and to address this Court's jurisdiction, this ruling is made without prejudice to plaintiff's right to bring a motion to remand this case.

**B.      The Merits of the Dispute.**

Having found that the Court has jurisdiction over this matter, the Court turns to whether

---

[1] While some authority suggests that Section 303 extends only to peaceful union conduct, *Morton*, 377 U.S. at 261, plaintiff has not cited any authority holding that a federal court lacks jurisdiction over cases involving both alleged violent and non-violent, classic secondary activity.

ORDER GRANTING MOTION
TO DISSOLVE THE TRO - 5

the TRO issued by the King County Superior Court should be dissolved. Plaintiff contends that it continues by its own terms until September 25, 2009, while defendant counters that as an injunction issued under the Norris-LaGuardia Act ("NLA"), 28 U.S.C. §§ 101-115, it expired five days after it was issued, on September 16, 2009. The injunction, however, was not issued pursuant to the NLA or by a district court, so the five-day time period does not apply. Because the TRO has not yet expired, the Court considers whether to dissolve it.

Defendant contends that the TRO amounts to an unconstitutional prior restraint on speech. A prior restraint is an order "*forbidding* certain communications when issued in advance of the time that such communications are to occur." Alexander v. United States, 509 U.S. 544, 550 (1993) (emphasis in original) (internal citation and quotation omitted) (explaining that TROs forbidding speech are "classic examples of prior restraints"). They come to the Court with a "heavy presumption" against their validity. Organization for a Better Austin v. Keefe, 402 U.S. 45, 419 (1971) (vacating an order enjoining petitioners from distributing leaflets anywhere in a particular town). The presumption is based on the fact that prior restraints "are the most serious and least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1975). In evaluating whether the dissolve the TRO, the Court does not concern itself with the truth or falsity of defendant's statements. See, e.g., Keefe, 402 U.S. at 48.

In this case, the Court finds that the TRO is overbroad. It prohibits, among other conduct, defendant and its members, agents, employees, and representatives from "directly or indirectly intimidating or persuading or attempting to intimidate or persuade plaintiff's members or prospective members to discontinue or refrain from doing business with plaintiff" and "[d]isseminating or spreading statements, reports, circulars, pamphlets, or leaflets among plaintiffs [sic] customers or the general public, urging them not to patronize plaintiff's sorority or suggesting that Plaintiff is a 'rat.'" Temporary Restraining Order at p. 2. The TRO forbids a broad range of protected speech and includes no geographic or temporal limitations. The Supreme Court has explained that "peaceful pamphleteering is a form of communication

ORDER GRANTING MOTION
TO DISSOLVE THE TRO - 6

protected by the First Amendment." <u>Keefe</u>, 402 U.S. at 419 (citations omitted). Conduct is protected even if its goal is to coerce or influence another's party's conduct, as was defendant's goal in this case. <u>Id.</u> Plaintiff also contends that because Marquise has left the job site, defendant's only goal is to punish it for hiring Marquise. Even if that were true, the First Amendment protects speech aimed at "public criticism of . . . business practices." <u>Id.</u> at 420 ("No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court."). Because the TRO prohibits a broad range of protected conduct, the Court finds that it is overbroad and should be dissolved.

Although the finding of overbreadth is sufficient to dissolve the TRO, two more factors support the conclusion that it should be dissolved. First, the TRO was obtained on an *ex parte* basis. Although that method of obtaining the TRO was not improper, it was granted without allowing defendant an opportunity to respond. The record is now more complete. Second, the primary harm of which plaintiff complained, harm to its ability to attract new sorority recruits, has passed as recruitment week has concluded. For all of these reasons, the Court dissolves the TRO.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion (Dkt. #4) and dissolves the TRO.

DATED this 23rd day of September, 2009.

*MW S Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
TO DISSOLVE THE TRO - 7